UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOFEDA Z.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,[1]<br><br>　　　　　　　　　Defendant. | Case No.:  24-cv-2224-MMA-DDL<br><br>**REPORT and RECOMMENDATION FOR ORDER AFFIRMING COMMISSIONER'S DECISION and ENTERING JUDGMENT IN COMMISSIONER'S FAVOR** |

The undersigned respectfully submits this Report and Recommendation to United States District Judge Michael M. Anello pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1.c.  Mofeda Z. ("Plaintiff") appeals the Commissioner's denial of her application for supplemental security income pursuant to 42 U.S.C. § 405(g), and requests remand to the Social Security Administration for an award of benefits, or, alternatively, further proceedings.  For the reasons stated below, the Court **RECOMMENDS** the District Judge **AFFIRM** the Commissioner's decision and enter judgment in the Commissioner's favor.

---

[1]　　Frank Bisignano is automatically substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

# I.

# BACKGROUND

## A. Plaintiff's Application for Disability Benefits

On July 8, 2021, Plaintiff applied for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Certified Administrative Record ("AR") [Dkt. No. 13] at 98-99.[2] Plaintiff alleged she had been unable to work since December 12, 2020, due to depression, anxiety, sleep problems, breathing problems, headaches and chronic back pain. *See id.* After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 174-76. Plaintiff appeared with counsel and testified before the ALJ on February 15, 2024. *Id.* at 60-75. The ALJ issued an unfavorable decision on April 2, 2024, having concluded Plaintiff had not been under a disability, as defined in the Act, since the date her application was filed. *See generally id.* at 17-40. On October 25, 2024, the Appeals Council denied review, and the ALJ's decision became final. *See id.* at 1-3. This appeal timely followed.

## B. Summary of ALJ's Findings

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. *See* 42 U.S.C. § 423(d). The ALJ followed the sequential five-step evaluation set forth in the regulations in adjudicating Plaintiff's disability claim.[3] *See generally* Dkt. No. 13-2 at 20-38.

---

[2] The Court uses the parties' pagination of the AR. All other docket citations are to the CM/ECF page numbers.

[3] The ALJ must determine the following: at step one, whether the claimant is engaged in substantial gainful activity; at step two, whether the claimant suffers

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 8, 2021, the date of her application. *Id*. at 20.

At step two, the ALJ found Plaintiff had the following severe impairments: anxiety, depression, PTSD, degenerative disc disease, hypertension, obesity, post-covid syndrome, fibromyalgia, headaches, and history of pulmonary embolism secondary to oral contraceptive pills. *Id*. The ALJ found Plaintiff's other alleged physical impairments, including carpal tunnel syndrome, myalgia, and IBS, were not severe. *Id*. In making this finding, the ALJ considered treatment notes showing these conditions have been successfully treated, controlled, stabilized, or only minimally affect Plaintiff's work activities. *Id.*

At step three, the ALJ found Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id*. The ALJ considered Plaintiff's obesity, headaches, fibromyalgia, and combination of mental impairments and determined these impairments, both individually and in combination, do not equal the severity of any listed impairment. *Id.* at 20-23.

At step four, the ALJ then determined Plaintiff:

> Has the residual functional capacity to perform a range of light work…she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; she can sit six hours and stand/walk six hours each in an eight-hour workday with normal breaks; can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders,

---

from a severe impairment within the meaning of the regulations; at step three, whether the impairment meets or is medically equal to an impairment identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether the claimant can perform their past relevant work; at step five, whether the claimant can make an adjustment to other work. If the claimant is found not disabled at any step, the analysis does not proceed to the next step. *See* 20 C.F.R. § 416.920.

>ropes, and scaffolds; avoid concentrated exposure to extreme cold, extreme heat…and…pulmonary irritants; and avoid even moderate exposure to hazards such as unprotected height and dangerous moving machinery. She is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with normal breaks every two hours; no interaction with the general public; occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product; unable to perform highly time pressured tasks such that the claimant is limited to generally goal-oriented work, not time sensitive strict production quotas . . . ; in a low-stress environment where there are few work place changes . . . and the claimant has minimal decision-making capability . . .."

Dkt. No. 13-2 at 24.

The ALJ considered Plaintiff's subjective testimony regarding her limitations, as well her and her daughter's written statements. *Id.* at 25. The ALJ also examined extensive medical records. *Id.* at 26-35. Having reviewed the evidence, the ALJ found although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 35.

The ALJ also reviewed the medical opinions and prior administrative medical findings in the record. *Id.* at 37. The ALJ considered the opinions of two consultative examiners, Plaintiff's treating physician, and DDS reviewing medical and psychological consultants. All except the Plaintiff's treating physician limited Plaintiff to light work, which were persuasive because they were supported by objective findings and generally consistent with the medical record. *Id.* at 38-39. The ALJ found Plaintiff's treating physician's opinion that Plaintiff is not capable of even sedentary level work to be unpersuasive because it is not supported by the

physician's own treatment notes, and was not consistent with other evidence in the record. *Id.* at 38.

At step five, the ALJ determined an individual of Plaintiff's age, education, work experience, and RFC would be able to perform jobs which exist in significant numbers in the national economy. *Id.* at 40. Accordingly, the ALJ concluded Plaintiff was "not disabled" within the meaning of the Act. *Id.* at 41.

## II.
## ISSUES PRESENTED

The sole issue raised on appeal is whether the ALJ improperly rejected Plaintiff's subjective testimony regarding her functional limitations. *See* Plaintiff's Opening Brief ("Op. Br."), Dkt. No. 15, at 4.

## III.
## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023).[4] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id.* This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* If the

---

[4] Unless otherwise noted, all citations, subsequent history, and parallel reporter citations are omitted; in direct quotes, all internal quotation marks, brackets, ellipses and footnotes are omitted, and all emphasis is added.

evidence is susceptible of more than one rational interpretation, the Court must uphold the ALJ's decision. *See id*. at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

## IV.

## DISCUSSION

### A. Legal Standards Regarding Subjective Allegations

In assessing whether to credit a claimant's subjective allegations regarding their functional limitations, the ALJ follows a two-step process. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). When a claimant satisfies the first step, and absent any evidence of malingering, "the ALJ can reject the claimant's testimony . . . only by offering specific, clear and convincing reasons for doing so." *Id.*; *see also Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) ("[A]n adverse credibility finding must be based on clear and convincing reasons.").

To meet this standard, the ALJ must not only *identify* medical evidence in the record that is inconsistent with a claimant's subjective allegations but must also *explain* the inconsistency. *See Ferguson*, 95 F.4th at 1200. The Administration's guidelines are in accord, providing that "the [ALJ's] determination or decision

must contain specific reasons for the weight given to the individual's symptoms [that are] consistent with and supported by the evidence . . .." Social Security Ruling 16-3p: *Evaluation of Symptoms in Disability Claims* ("SSR 16-3p"), 81 Fed. Reg. 14166 (S.S.A. Mar. 16, 2016). Stated otherwise, the ALJ must "show his work." *Smartt*, 53 F.4th at 499.

Requiring an ALJ to support their evaluation of the claimant's subjective testimony with specific findings enables the reviewing court to determine whether the ALJ "arbitrarily discredit[ed]" the testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (noting "the ALJ must provide sufficient reasoning" to "permit meaningful review"); SSR 16-3p (stating ALJ's evaluation of symptom testimony must be explained clearly so "any subsequent reviewer can assess how the adjudicator evaluated" it). As the Ninth Circuit has explained, "[t]he standard isn't whether [this] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

If the ALJ does not provide sufficient reasons for rejecting the claimant's testimony, "then the ALJ's credibility determination is not supported by substantial evidence." *Id.* at 1199. But where the ALJ's credibility determination is adequately supported, this Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. "[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review." *Brown-Hunter*, 806 F.3d at 494.

**B. The ALJ's Finding That Plaintiff's Impairments Did Not Cause the Degree of Limitation Alleged Is Not Erroneous**

At the hearing, Plaintiff, testifying through a translator, answered the ALJ's questions about her ability to work as follows:

/ / /

/ / /

/ / /

> Q: Why is it you believe you can't work?
>
> A: Because of my health situation.
>
> Q: And what about your health situation? What is it that you think you can't do?
>
> A: The most important thing, my back hurts a lot and I cannot move easily.
>
> Q: Anything else?
>
> A: And I don't sleep much. I'm not comfortable with sleeping.
>
> Q: Anything else?
>
> A: She has fibromyalgia, Your Honor.

AR at 68. She further testified she used a cane and an inhaler, both prescribed by a doctor, and that she was undergoing mental health care treatment. *Id*. at 69-70. Later, on questioning from her attorney, Plaintiff testified:

> Q: . . . Do you think you would be able to do any kind of job where – for a full time basis, eight hours a day, five days a week, even a job that was . . . a seated job that didn't require more than five or ten pounds of lifting?
>
> A: No.
>
> Q: And why not? Let's say you were to do one, what would happen that would prevent you from working?
>
> A: I cannot carry or lift weight much and I cannot stand on my leg for a long time and most of the time, I lay down.
>
> Q: So my question was about a job that was a seated job that didn't require more than five or ten pounds of lifting, could you do that job?
>
> A: No, I can't.
>
> Q: And let's say you were to try, what would you experience? What would prevent you from doing that?
>
> A: I can't concentrate on the job and my body would hurt all over.

AR at 70-71.

Referring to Plaintiff's disability application forms, the ALJ also noted Plaintiff alleged she was unable to work due to "depression, anxiety, sleep problems and nightmares, hard to breathe at night-time, headache, migraine, chronic back pain, [and] fibromyalgia." AR at 24 (citing *id.* at 248). The ALJ also noted reports Plaintiff:

> has gotten worse with personal care and household tasks and is incapable of taking care of herself. Her depression and social activities have gotten worse. She no longer gets off her bed. Her health conditions became worse due to her psychological issues, anxiety and insomnia . . .. She has breathing issues and uses an inhaler . . . She is always in an uncomfortable situation, stress, PTSD . . . [and] severe migraine.

*Id.* at 24 (citing *id.* at 286-93).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause many of her alleged physical symptoms. AR at 25. Following a lengthy summary of the medical records, however, the ALJ concluded Plaintiff's "allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations are found to be only partially consistent with the medical evidence of record." *Id.* at 38. The ALJ identified several reasons for discounting Plaintiff's allegations, including inconsistencies with objective findings and examination results; inconsistencies with Plaintiff's reported activities of daily living; Plaintiff's non-compliance with recommended treatments; and the improvement of her symptoms with medication and other treatment. *Id*. at 35-38. Ultimately, the ALJ concluded the RFC assessment was "consistent with the appropriate medical findings and the overall evidence in the file." *Id.* at 38.

/ / /

/ / /

1. *Inconsistency with Other Evidence in the Record*

The ALJ found Plaintiff's allegations of disabling mental impairments were undermined by other evidence in the record, including objective medical records. The ALJ noted "mental status examinations during the period at issue have been overall normal," citing benign examination findings, and noted records indicating self-reported improvements in her mood and appetite. AR at 35-36. The ALJ also found the opinions of the state agency medical consultants regarding Plaintiff's mental limitations persuasive, again citing the "psychiatric examination findings by her treating providers have been overall normal, coherent and linear though process, intact associations were intact, intact recent and remote memory, intact attention span/concentration, intact language, [and] normal fund of knowledge." *Id.* at 38. To the extent Plaintiff's mental impairments affected her ability to perform work-related activities, those limitations were incorporated into the ALJ's RFC. *Id*. at 24.

The ALJ likewise found Plaintiff's allegations of back pain were not consistent with the medical record. The ALJ again noted benign findings on physical examination, including normal sensation, reflexes, gait and strength. AR at 34. Imaging showed "only mild degenerative disease." *Id.* The ALJ also noted Plaintiff went several months without complaints of any back pain. *Id.* In rejecting the medical opinion of Plaintiff's physical medicine and rehabilitation physician who deemed Plaintiff incapable of working, the ALJ again cited to normal musculoskeletal findings including "normal gait, strength, and sensation in the extremities." *Id.* at 37.

The ALJ also found Plaintiff's allegations of disabling respiratory impairments were undermined by the objective medical evidence. The ALJ noted cardiology and pulmonology workups were "overall unremarkable" and that physical findings on examination were "consistently normal." *Id.* at 34. Pulmonary function tests were also normal, and Plaintiff was diagnosed with

"only possible mild persistent asthma." *Id.* The ALJ also noted there was "little to no evidence of complaints of shortness of breath" after September 2022. *Id.*

Regarding Plaintiff's complaints of headaches, the ALJ noted examination findings on neurological examinations were normal. AR at 35. The ALJ also noted there were no complaints of headaches in the record after August 2022. *See id*.

Finally, the ALJ observed that with one exception, none of Plaintiff's treating physicians "th[ought] she had any physical disability which would prevent her from working."[5] AR at 29, 35.

The Court finds these are clear and convincing reasons to discount Plaintiff's subjective testimony under prevailing Ninth Circuit standards. *See*, *e.g.*, *Smartt*, 53 F.4th at 498 ("[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting

---

[5] The ALJ found Plaintiff's treating physical medicine physician's opinion that Plaintiff was not capable of even sedentary work unpersuasive because it was "not supported by the physician's own treatment notes" and "inconsistent with the other physical examination and imaging findings of record." *Id*. at 37. Plaintiff argues that the specialist's opinion should have been "given more weight" than the opinions of Plaintiff's treating physicians. Op. Br. at 13-14. To the extent Plaintiff asserts the ALJ's evaluation of the medical opinions in the record were erroneous as a further and independent basis for reversal, Plaintiff has not met her burden of demonstrating error. *Molina*, 674 F.3d at 1111. In any event, the Court finds no error in the ALJ's weighing of the opinion testimony. It is well established in this Circuit that the ALJ "need not take every medical opinion at face value." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024). "Rather, the ALJ must scrutinize the various – often conflicting – medical opinions to determine how much weight to afford each opinion." *Id*. at 1213-14. The Court finds the ALJ appropriately considered the supportability and consistency of all medical opinions and prior administrative medical findings in the record, as required by the regulations, and judged their persuasive value accordingly. *See* 20 C.F.R. § 416.920c(c)(1).

such testimony") (collecting cases) (emphasis in original); *see also Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ provided "a clear and convincing reason" to reject claimant's testimony by identifying "evidence [that] directly contradicted" it); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). The ALJ may also compare a claimant's statements to medical providers regarding their symptoms and daily activities to statements made in the context of their disability application. SSR 16-3p (where claimant has provided "information" about their symptoms and daily activities "to [a] medical source . . . the information may be compared with the [claimant's] other statements in the record").

        2.    *Nature and Effectiveness of, and Compliance with, Treatment*

The ALJ cited Plaintiff's relatively conservative course of treatment and her noncompliance with several recommended therapies as further reasons to discount her subjective testimony. For example, Plaintiff reported some improvement in her mental health symptoms and difficulty sleeping with medication, and told providers she had "noticed a difference" in her mood from doing relaxation and breathing exercises. AR at 32-33. The ALJ noted Plaintiff reported feeling "comfortable with her medications and wanted to continue them," and she took "the same medications without change" during the relevant period, indicating their effectiveness. *Id*. at 36. The ALJ also cited medical records showing Plaintiff was often noncompliant with taking her psychiatric medications. *See id*. at 32-33, 36.

Plaintiff's back pain and other myalgias were also treated conservatively. AR at 34-35. The ALJ noted Plaintiff's condition improved with the use of pain patches and ointments. *Id*. at 35. Plaintiff's providers recommended physical therapy and chiropractic care, and prescribed a variety of medications. *Id*. However, Plaintiff was frequently noncompliant with her medication regimen,

citing adverse side effects or because "she did not like taking medications." *Id*. Likewise, due to her fear of needles, Plaintiff did not follow through with recommendations for trigger point injections and corticosteroid injections. *Id*. The ALJ also noted Plaintiff did not follow through with a referral to a neurologist for further evaluation of her pain complaints. *See id*. at 34. The ALJ similarly observed Plaintiff's respiratory complaints were treated conservatively with inhalers, but Plaintiff had "poor compliance" with this treatment. *Id*. There was no evidence of increasing interventions. *See id*. The ALJ further noted Plaintiff's pain and respiratory symptoms were exacerbated by her obesity, but she had not made recommended life style changes to lose weight. *Id*. at 35.

Plaintiff's headaches were also treated with medications, and her providers recommended Botox injections. AR at 35. Plaintiff discontinued most medications due to side effects or lack of improvement, but reported improvement with Ubrelvy and did not seek any other medications or treatments. *See id*. at 30, 35. Again, Plaintiff declined Botox treatments due to her fear of needles. *Id*. at 35.

The Court finds the ALJ identified clear and convincing reasons to reject Plaintiff's subjective statements regarding her limitations. It is well settled in this Circuit that "[i]mpairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Kitchen*, 82 F.4th at 739 (finding no error in ALJ's rejection of subjective symptom testimony where claimant's "functioning" improved "with prescribed medication and psychotherapy sessions"); *accord* SSR 16-3p (the ALJ may consider "the effectiveness of medications in alleviating Plaintiff's symptoms" in evaluating subjective testimony). The ALJ also reasonably concluded Plaintiff's "ongoing conservative treatment and overall improvement [were] inconsistent with [her] testimony as to the severity of her impairments." *Smartt*, 53 F.4th at 500; *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative

treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). And it was appropriate for the ALJ to consider Plaintiff's failure to follow prescribed treatments in considering the intensity and persistence of her symptoms. *See* SSR 16-3p.

### 3. Activities of Daily Living

Finally, the ALJ cited Plaintiff's daily activities in support of his determination that Plaintiff's impairments were not disabling. *See* AR at 36. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)); *see also* SSR 16-3p. Here, the ALJ noted Plaintiff's self-reports to her providers that she "ke[pt] busy" during the day cooking, cleaning and running errands, and walked outdoors or on a treadmill for one hour for exercise, often daily. AR at 36; *see also id*. at 33-35. The Court finds the ALJ's reference to Plaintiff's daily activities is a clear and convincing reason to reject Plaintiff's testimony that she was unable to do any work at all.

Based on the foregoing analysis, the Court finds the ALJ provided "specific, clear and convincing" reasons for his credibility determination, by "enumerat[ing] the objective evidence that undermine[d] [Plaintiff's] testimony," *Kitchen*, 82 F.4th at 739, and "explain[ing] why the medical evidence is *inconsistent* with the claimant's subjective testimony." *Ferguson*, 95 F.4th at 1200 (emphasis in original). The Court is therefore persuaded the ALJ did not "arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958. In other words, the ALJ "show[ed] his work." *Smartt*, 53 F.4th at 499 ("the 'clear and convincing' standard . . . requires an ALJ to show his work"). Therefore, the ALJ's credibility assessment will not be disturbed. *See Brown-Hunter*, 806 F.3d at 494.

## C. Substantial Evidence Supports the ALJ's Conclusions

Having found the ALJ's evaluation of Plaintiff's subjective testimony is free of harmful error, the Court turns to the question of whether the ALJ's conclusion

is supported by substantial evidence.  The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *See Ahearn*, 988 F.3d at 1115.  Based on this review, the Court finds substantial evidence supports the ALJ's decision, as summarized below.

Plaintiff's treatment records confirm she suffered from degenerative disc disease, hypertension, obesity, post-covid syndrome, fibromyalgia, headaches, and a history of pulmonary embolism secondary to oral contraceptive pills.  AR at 346, 349, 374, 410, 418, 426.  However, physical examination findings were often benign or negative for these issues, and Plaintiff frequently denied any complaints when asked by providers.  *Id*. at 414, 429, 430, 438, 444, 482, 556, 575, 602, 654, 689.

Imaging revealed mild to moderate stenosis in Plaintiff's lumbar spine and mild degenerative disease in her cervical spine.  AR at 396, 423, 738. Physical examinations revealed tenderness and decreased range of motion in her lower back, AR at 356, 429.  Her back pain was variously treated with medication, chiropractic care, acupuncture, physical therapy and massage.  *Id.* at 349, 357, 620, 667. Plaintiff reported to her providers "stretching and massage relieves the pain." *Id.* at 349.  Plaintiff's other complaints of musculoskeletal pain were likewise conservatively treated.  *Id*. at 377; 701-02, 705.  Findings on physical examination revealed no deficits in strength, range of motion or sensation, and normal gait; imaging results were largely unremarkable.  *Id*. at 401, 429-30, 690, 695, 698, 702-03, 710, 723, 725, 735.

Plaintiff frequently complained of shortness of breath, but her complaints were "vague", and imaging showed no cardiopulmonary disease.  AR at 398, 529, 532.  A treadmill stress test was largely normal but demonstrated Plaintiff had limited functional capacity for her age.  *Id*. at 476-477.  Her primary care provider suspected her breathing difficulties were related to her anxiety.  *Id*. at 681.  Plaintiff was encouraged to increase her activities and to exercise daily, and was prescribed inhalers for occasional shortness of breath or wheezing.  *Id*. at 533, 541.

In June 2021, Plaintiff was evaluated by a headache specialist, who assessed her with chronic migraine and recommended preventive and rescue medications. AR at 418-19. Plaintiff's headaches were treated with medications, some of which she reported were effective. AR at 500, 509. She declined other treatments, including Botox injections. *See id*.

The medical evidence also confirms Plaintiff was diagnosed with PTSD, anxiety and depression. AR at 456, 460, 491, 595. Results of mental status examinations during psychiatric care visits were routinely benign or negative, including findings related to thought process, concentration, judgment and insight. *Id*. at 458, 490, 598, 765, 811, 826. Her providers noted her normal affect and pleasant demeanor. *Id*. at 362, 371, 458, 532, 593. Plaintiff's psychiatric conditions were treated with medications, talk therapy, and relaxation and breathing techniques. *Id*. at 613, 616, 766, 876-77. Plaintiff reported to her providers she was satisfied with her medications. *Id*. at 778. Plaintiff also reported improvement with breathing and relaxation. *Id*. at 762, 778.

Regarding her daily activities, Plaintiff reported she was able to drive, and liked to go shopping or out with friends, and "kep[t] busy" cleaning, cooking and running errands. AR at 597, 615, 808-09. She was walking up to one hour a day on her treadmill, although at times her pain prevented her from maintaining this practice. *Id*. at 847, 862. In 2021, she was reportedly attending school to obtain a license for child care. *Id*. at 328.

In November 2022, Plaintiff requested her primary care provider "send [the Administration] a report stating that she cannot work due to depression and joint pain." AR at 869. Her doctor "explained to [patient] I do not believe her physical condition qualifies for SSI" and encouraged her to contact her psychiatric providers regarding their assessment of her mental impairments. *Id*. at 871. In January 2024, Plaintiff again requested assistance with a "disability/attorney form." *Id*. at 768. Following a physical examination, the doctor found Plaintiff

was "an alert and oriented female who answers questions cooperatively." *Id*. at 770. Plaintiff demonstrated normal gait, normal range of motion in her arms and legs, and normal strength and sensation. *Id*. The doctor declined to sign Plaintiff's form, stating: "I do not see any physical disability nor mental incapacity for her to not work or qualify for permanent disability." *Id*.

At the Administration's request, Plaintiff underwent an internal medicine consultative examination on September 2, 2021. AR at 424-431. The examiner stated Plaintiff's ability to work was limited by her lumbar back pain, pulmonary embolus, and hypothyroidism, but concluded she was able to perform light work (*i.e.*, standing and/or walking up to 6 hours, sitting up to 6 hours, and lifting or carrying 10 pounds frequently and 20 pounds occasionally). *Id*. at 430-31. Also at the Administration's request, Plaintiff underwent a consultative psychological examination on February 8, 2022. *Id*. at 489-493. The examiner determined Plaintiff met the criteria for PTSD, major depression, social anxiety disorder, and generalized anxiety disorder. *Id*. at 491. The examiner also concluded Plaintiff was capable of executing on simple instructions but would be limited in her ability to carry out complex instructions, as well as her ability to maintain pace and endure stress. *Id*. at 491-92. The examiner further noted Plaintiff may have limited capacity to interact with the public, supervisors and coworkers. *Id*. at 492. All of these restrictions were incorporated into Plaintiff's RFC. *Id*. at 24.

On initial review, state consultant S. Wilkinson, Ph.D., determined Plaintiff could: understand/remember/carry out simple instructions; sustain concentration and attention for short, simple tasks; would benefit from conventional breaks to refocus; would benefit from occasional contact with coworkers and limited contact with the public; would do best with nonconfrontational supervision; and could adapt to changes in the work setting with advanced notice and additional training. AR at 119. State consultant F. Kalmar, M.D., opined Plaintiff was capable of light, unskilled work. *Id*. at 121. On reconsideration review, state consultant S. Gitlin,

1  M.D., affirmed the classification for light work. *Id*. at 145. State consultant M.
2  Gilson, Ph.D. affirmed the previous mental RFC. *Id*. at 149.

3  The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's credibility determination, the resulting determination that Plaintiff had the residual functional capacity to perform a reduced range of light work as described in the ALJ's decision, and the conclusion that Plaintiff is not disabled within the meaning of the Act. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C.A. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.

## **CONCLUSION**

For the foregoing reasons, the Court concludes the ALJ's decision is free of legal error and supported by substantial evidence in the record. The undersigned accordingly **RECOMMENDS** the District Judge issue an order: (1) adopting this Report and Recommendation in its entirety; (2) affirming the decision of the Commissioner; and (3) directing judgment be entered in the Commissioner's favor.

///
///
///
///
///
///
///
///
///

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed by not later than **September 9, 2025**. Any response to a party's objections must be filed by not later than **September 30, 2025**. Failure to timely file objections may waive the right to raise those objections on appeal. *See Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

**IT IS SO ORDERED.**

Dated: August 19, 2025

Hon. David D. Leshner
United States Magistrate Judge